HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA GEORGIANNA PALM,<br><br>Defendant. | CASE NO. 2:23-cr-00058-RAJ<br><br>ORDER ON DEFENDANT MARIA GEORGIANNA PALM'S MOTION TO DISMISS FOR PROSECUTORIAL VINDICTIVENESS |

## I.     INTRODUCTION

THIS MATTER comes before the Court on Defendant Maria Georgianna Palm ("Ms. Palm")'s Motion to Dismiss for Prosecutorial Vindictiveness. Dkt. # 106. Plaintiff United States of America ("the Government") filed a Response, to which Ms. Palm replied. Dkt. ## 128, 133.[1]

For the reasons set forth below, the Court **DENIES** Ms. Palm's Motion.

## II.    BACKGROUND

On April 19, 2023, a grand jury returned a four-count indictment charging Brandon Denzel Washington ("Mr. Washington") with crimes relating to sex trafficking through force, fraud, and coercion. Dkt. # 1. In its Memorandum in Support of Mr. Washington's Detention, the Government outlined the relationship between Mr. Washington and Ms.

---

[1] The Court held oral argument on February 3, 2025. Dkt. # 192.

ORDER – 1

1   Palm, stating that Mr. Washington rented Ms. Palm a luxury apartment in Bellevue and
2   that he featured her in nationwide advertisements soliciting commercial sex. Dkt. # 9 at 6.
3   Later, in its Response to Mr. Washington's Motion to Re-Open Detention, the Government
4   referred to Ms. Palm as "a victim." Dkt. # 30 at 6.

5   Ms. Palm alleges that after Mr. Washington's arrest, she contacted the Bellevue
6   Police Department to locate him. Dkt. # 106-5 at 2–3. She then received a call from a
7   detective who informed her that she was not in trouble but that he would appreciate her
8   answering some questions. *Id.* at 3. After indicating she did not wish to do so, the detective
9   told her he "would hate to see [Ms. Palm] as a codefendant. *Id*. Ms. Palm then retained
10  Tim Rusk ("Mr. Rusk") as counsel, who coordinated primarily with former Assistant
11  United States Attorney Erin Becker ("AUSA Becker"). *Id.* at 4–5. In a telephone call with
12  Mr. Rusk, AUSA Becker confirmed Ms. Palm's suppositions that agents had been trying
13  to interview her, but she agreed to have them "back off." *Id.* at 5. Ms. Palm claims she
14  declined an offer of victim protective services and cooperation with the government. *Id.*
15  at 5–6.

16  By January 2024, the Government's view of Ms. Palm had shifted from that of a
17  victim to a co-conspirator, a result of new information learned during the course of the
18  investigation, specifically in a report documenting the contents of Mr. Washington's cell
19  phone. Dkt. # 128 at 4. Recovered messages from an application called Telegram revealed
20  conversations between Mr. Washington and Ms. Palm in which he referred to her as "my
21  assistant pimp" and they discussed sex trafficking activities. *Id.* at 3–4. On January 10,
22  2024, the Government filed a Response to Mr. Washington's Motion to Modify Conditions
23  of Appearance Bond in which it referred to Ms. Palm as a woman whom "[Mr.
24  Washington] pimped out over a period of five years." Dkt. # 62 at 1.[2] The Government
25  explained that "the evidence is both robust and clear that [Ms. Palm] is or was a prostitute,

---

[2] Ms. Palm submitted a letter in support of Mr. Washington's Motion. Dkt. # 59-1.

ORDER – 2

that [Mr. Washington] was her pimp, and that she was fully involved in his activities." *Id.* at 1–2. Nowhere in the pleading does the Government refer to Ms. Palm as a "victim."

That same day, AUSA Becker and Mr. Rusk had a telephone call wherein they discussed the mounting evidence against Ms. Palm. Dkt. # 128 at 5. Ms. Palm's Motion alleges there was another call between AUSA Becker and Mr. Rusk before Mr. Washington's detention hearing. Dkt. # 106 at 5. In this call, AUSA Becker supposedly told Mr. Rusk that if Ms. Palm continued supporting Mr. Washington, then she would be charged as a codefendant. *Id.*[3] The Government indicted Ms. Palm on March 20, 2024, charging her with one count of Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, a violation of 18 U.S.C. § 1594(c). Dkt. # 70. Federal agents executed a search warrant on Ms. Palm's person on March 28, 2024, the same day Ms. Palm made her initial appearance and pleaded not guilty to the lone count in the Superseding Indictment. Dkt. # 106 at 6. Ms. Palm asked that her attorney be present during the search, but the agents did not accommodate her request. *Id.* at 7.

Ms. Palm now moves to dismiss the charge against her based on vindictive prosecution. She also requests an evidentiary hearing and that the Court order discovery of certain reports and memoranda.

### III. LEGAL STANDARD

"The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926). "In the ordinary case, so long as the prosecutor has probable cause to believe the that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation

---

[3] The Government asked current defense counsel whether Mr. Rusk documented the telephone call, and to date no such documentation has been provided.

ORDER – 3

marks and citation omitted). "Vindictive prosecution claims usually arise when a defendant is penalized for [the] exercise of statutory or constitutional rights by the imposition of a higher sentence or institution of increased charges." *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir. 1984). The defendant must show vindictiveness on the part of those who made the charging decision. *See United States v. Edmonds*, 103 F.3d 822, 826 (9th Cir. 1996).

A defendant establishes a prima facie case of prosecutorial vindictiveness when she shows either direct evidence of actual vindictiveness or facts that warrant an appearance as such. *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995). A presumption of vindictiveness arises only when a defendant presents evidence that indicates "a realistic or reasonable likelihood of vindictiveness." *Id*. If a defendant is successful in presenting evidence that gives rise to a presumption of vindictiveness, the burden then "shifts to the prosecution to show that independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its decisions." *Id*.

## IV.  DISCUSSION

### A.  Prosecutorial Vindictiveness

Ms. Palm's primary argument is that the Government's repeated description of her as a "victim" who was under the control of Mr. Washington shows a realistic likelihood of vindictiveness, as the Government "only changed that characterization from victim to defendant after she refused to cooperate by a specific deadline set by the [G]overnment." Dkt. # 106 at 12. The Court finds the Government's response to this argument sufficiently plausible to defeat any prima facie showing of prosecutorial vindictiveness. It is natural that in a complex criminal proceeding with multiple parties, the evaluation of a particular individual's involvement may evolve due to newly discovered evidence.

Here, the genesis of such evolution was the data extracted from Mr. Washington's cell phone on September 18, 2023. Defendant's Reply neglects basic temporal considerations and instead accuses the Government of prosecutorial delay without any

ORDER – 4

evidence. The Reply notes that "[w]hile the [G]overnment did not produce the Cellebrite Report in discovery until January 25, 2024, [ ] [it] was in possession of the information contained on that cell phone, including all of Mr. Washington's messages . . . with Ms. Palm since September of 2023." Dkt. # 133 at 3–4. Just because the Government obtained the cell phone information a mere four months before producing it in discovery does not mean there is a showing of vindictiveness or bad faith. It is reasonable to think that four months is a sufficient timeframe to evaluate the growing compilation of evidence and determine how it may affect Ms. Palm's status as a potential defendant. Had there been, for example, a year-long gap between gaining possession of the records and producing them in discovery, the Court's evaluation might be different. The Government was also consistent in no longer referring to Ms. Palm as a victim from January 2024 (after it completed its review of the cell phone records) to when it brought charges against her.

Ms. Palm also fails to address the case law cited by the Government in its Response. In *United States v. Goodwin*, the Supreme Court analyzed a claim of vindictive prosecution after failed plea negotiations preceded an arraignment. *See* 457 U.S. 368, 370 (1972). The Court held that at the pretrial stage, "the prosecutor's assessment of the proper extent of prosecution may not yet have crystallized." *Id.* at 381. The Court also reasoned that "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information . . . has a broader significance." *Id.* at 382. Such is the case here. Although the Government initially referred to Ms. Palm as a "victim," the exhaustive cell phone records, which show that Ms. Palm assumed a pseudo-administrative role in Mr. Washington's operation, corroborate the theory that Ms. Palm was more involved than the Government initially realized. *See* Dkt. # 128 at 3. Accordingly, Ms. Palm cannot make a prima facie case of prosecutorial vindictiveness.

Ms. Palm also fails to provide evidence to support her claims. First, there is no record that her conversation with the Bellevue Police Department took place. Assuming,

ORDER – 5

*arguendo*, that the detective did imply that Ms. Palm may become a codefendant, there is no link between that statement and a suggestion of vindictiveness on the part of AUSA Becker. Moreover, the phone call took place almost a year before the Government charged Ms. Palm. Second, defense counsel has no record, such as notes, to support the assertion that AUSA Becker told Mr. Rusk prior to Mr. Washington's detention hearing that if Ms. Palm continued to support him, she would be charged. Dkt. # 128-1 at 2–3.[4] To cinch the matter, Ms. Palm cites no legal authority when averring that investigators should have complied with her request to have her attorney present before executing the search warrant. Thus, Ms. Palm cannot satisfy the high burden of showing prosecutorial vindictiveness as a result of her refusal to cooperate. *See United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982) (holding that when charges "are filed in the routine course of prosecutorial review or as a result of continuing investigation, there is no realistic likelihood of prosecutorial abuse, and therefore no appearance of vindicative prosecution arises merely because the prosecutor's action was taken after a defense right was exercised.").

### B.     Requests for Evidentiary Hearing and Additional Discovery

The Court summarily denies Ms. Palm's requests for an evidentiary hearing and additional discovery. "A criminal defendant may be entitled to discovery if he or she establishes a prima facie showing of a likelihood of vindictiveness by some evidence tending to show the essential elements of the defense." *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990). "It would be too easy for defendants to obtain discovery on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000). "To warrant discovery, the defendant must show 'some evidence' of 'genuine animus,' not the mere possibility that animus might exist under the

---

[4] Again, the Government inquired about the existence of such notes, but it appears defense counsel did not respond to the request.

ORDER – 6

circumstances." *Id*. The Court established, *supra*, that Ms. Palm failed to make a prima facie showing of prosecutorial vindictiveness. Accordingly, her request for discovery lacks merit. Independent of this fact, the Court also notes that her requests are overbroad and not proportional to the needs of this case.[5] Furthermore, holding an evidentiary hearing would waste valuable judicial resources and is unnecessary given that the Court has sufficient information to adjudicate the instant Motion.

## V. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Defendant Maria Georgianna Palm's Motion to Dismiss for Prosecutorial Vindictiveness. Dkt. # 106.

DATED this 21st day of February, 2025.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[5] Such requests include all reports documenting law enforcement contact with Ms. Palm and all writings documenting the decision to charge Ms. Palm in the Superseding Indictment. Dkt. # 106 at 14–15.

ORDER – 7